UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
May 13, 2020
David J. Bradley, Clerk

| | | |
|---|---|---|
| Vikas WSP Limited, | § § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-13-3426 |
| Economy Mud Products Company, | § § § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1. *Introduction.*

    A Texas corporation bought guar gum from a company in India. Bringing the seven-year dispute between them to an end, the Texas corporation moves for summary judgment against the guar supplier.

2. *Background.*

    Economy Mud Products Company is a Texas corporation that sells guar to oilfield-service companies in the United States. Guar is used to alter the characteristics of water used in drilling. For over fifteen years it purchased guar from Vikas WSP Limited – an Indian company. Vikas buys its guar from Indian suppliers, including:

    | | |
    |---|---|
    | N.M. Food Products | N.M. Exports |
    | N.M. Agro Food Products Limited | N.M. Agro Food Products Pvt. Ltd. |
    | Manoj Trader | Nand Lal Mahabir Parshad |
    | Nand Lal Naresh Kumar | Ruchi Soya Industries Limited |

    In 2012, Economy submitted purchase orders to Vikas for pure, high viscosity guar. Under the parties' agreement, each delivery was to be tested for quality by Vikas and then shipped to Economy with a certificate of compliance.

Economy's own quality checks later revealed that the Vikas-supplied guar was considerably lower quality than the contract had specified.

Economy canceled its remaining orders. On November 19, 2013, Vikas sued.

3. *Settlement.*

In December 2014, the parties settled the underlying lawsuit.

Under the settlement, Economy had to pay Vikas $80 million over the next two years. As a condition to further payments and to preserve Economy's business reputation in India, Vikas had (a) to disclose information – the name, contract, delivery date, and payment date – for each supplier of guar purchased for Economy, and (b) to ensure that all suppliers were paid in full by December 31, 2014. If Vikas did not comply, it would be in breach of the settlement; Economy's obligation to continue paying would terminate.

On December 30, 2014, Vikas gave Economy the suppliers' information, representing that N.M. Food and Ruchi had been paid for the guar delivered to Vikas for Economy's 2012 purchases.

In June 2015, Economy learned from a supplier that they had not been paid as Vikas had represented. While this was shown not to be entirely true – the suppliers were paid but only in part – Vikas argued that an undisclosed agreement with N.M. Food discharged its duty to pay N.M. in full.

On March 1, 2017, the court excused Economy's obligations under the settlement because of Vikas's breaches.

4. *Fraud.*

On September 16, 2016, the court struck Vikas's pleadings after multifaceted misconduct. Economy's fraud claim against Vikas is all that remains.

Economy must show that Vikas (a) made a material misrepresentation (b) knowing it was false (c) intending Economy to rely on it and that (d) Economy did reasonably rely on it to its detriment. Because Vikas made

promises in the settlement that it at the time never intended to uphold, Economy will prevail.

    A.    *Promises.*

When the parties settled on December 20, 2014, Vikas promised that it would:

    (1)    Pay the guar suppliers *in full*;

    (2)    Indemnify Economy against claims arising from the Indian seed distribution program and Indian farmers;

    (3)    Protect Economy from criminal actions in India;

    (4)    Stop its representatives from threatening or injuring Economy and its employees;

    (5)    Disclose the suppliers and contracts that produced Economy's guar, including amendments and novations; and

    (6)    Keep the settlement agreement confidential.

Several of the unusual items reflect Economy's experience with Vikas.

Economy promptly performed – it paid Vikas $4.5 million on November 25, 2014, $20.5 million on December 31, 2014, and $2.5 million each month until July 2015. It stopped when it was told that Vikas had not paid the suppliers, materially breaching its obligation.

Instead of doing what it promised, Vikas:

    (1)    Partially paid the guar suppliers while swearing that it paid in full;

    (2)    Did not indemnify Economy when the farmers and seed distributors demanded payment;

    (3)    Did not defend Economy from criminal charges against it;

    (4)    Told the farmers to make fraudulent buyback claims against Economy and gave them the fraudulently-stamped papers to do it and threatened to burn Economy's buildings down and hurt its employees;

  (5) Agreed to a settlement with one of its suppliers on December 24, 2014, without disclosing it to Economy; and

  (6) Gave a copy of the confidential settlement agreement to that supplier.

### B. *Vikas's Deception.*

Vikas has consistently lied, recanted sworn commitments, and fabricated evidence. Its conduct when settling and throughout this case shows that it never intended to uphold its promises. It intended that Economy act on its lies, gaining $40 million.

#### (1) *The Agreement.*

"Payment in full" is not ambiguous. It means that the *entire* amount owed is disbursed to the claimant farmers. Economy and Vikas agreed that the suppliers must be paid everything they were owed to salvage Economy's reputation and business in India.

Vikas only paid the suppliers in part. It tries to circumvent its obligation by arguing that paid in full could mean paid in part. It does not. It promised – as a condition of settling this suit – that the suppliers would be fully compensated at the level of the farmers' original claims. It never produced accurate, reliable, or semi-traditional accounting records to show that it paid. It being common practice to pay guar suppliers in kind does not matter – it is not what Vikas promised Economy. That claim is unsupported by the hard facts.

Nor did Vikas intend to pay them in full. Its backdoor agreement with the supplier – which was not disclosed, further violating the agreement – is an agreement to pay in part. It could not sign an agreement to pay partially one day and then in good faith sign the agreement with Economy promising to fully pay. Vikas never intended to uphold its settlement.

Immediately after the agreement was signed, three Indian farmers made claims for payment from Economy. Economy forwarded these claims to Vikas, who had promised to indemnify it. Vikas not only denied that it was obliged to

pay it, but had already told the farmers to make the claims and had given them the fraudulent paperwork to do it.

        (2)    *Post-Agreement.*

Vikas's misconduct in settling is consistent with its conduct throughout this case.

In its complaint, Vikas talked about the Frankfurt Agreement. It swore that it was an oral agreement that Vikas would accept Economy's canceling two orders. Economy says this agreement does not exist. Neither a contract or even collateral references that there was one had been offered to the court.

Three years later, the court ordered the record from a related criminal case in India. A copy of the purported agreement materialized. In that case, Agarwal – Vikas's managing director – insisted that (a) the agreement was written, signed, and had the orders attached, and (b) it was authenticated by Economy's inked stamp on each page. The stamp apparently is of the wrong company.

After more inconsistencies, the court ordered Vikas to appear to explain them. Its counsel withdrew from the case. Vikas did not appear, hire new counsel, as ordered, or ask for a continuance. It blamed its absence on a setting in a case in India on a day that the Indian court was closed.

The court then ordered Vikas to bring its agreement with one of the suppliers to its deposition. It gave none of the supporting evidence that the court required – suggesting that the agreement was fabricated.

To examine the authenticity of the settlement agreement with the supplier, the court ordered Vikas to bring the hard drive of the computer on which the agreement was drafted to Texas. The courier left the computer on his seat on a train while he got off to get tea. It was stolen. Or so Vikas says.

Vikas spends a lot of time in its response on the lying and cheating of the suppliers, but offers no explanation for its own conduct. It could have easily debunked the suppliers' lies by showing the evidence the court ordered – it did not. Had the supplier been paid in full, as required by the settlement agreement, it would have no reason to deny the existence of the agreement to renegotiate its

terms. Having learned that he agreed to partial payment when the settlement with Economy required full payment, the supplier tried to get more money.

No reasonable person could find – given Vikas's conduct during the settlement and throughout this case – that it intended to honor the agreement.

### C. Reliance.

Economy settled this case to make things right with its business associates in India. It intended – through the settlement agreement – to (a) fix the delivery and quality issues it had with Vikas and (b) settle its debts with the suppliers so that it could move forward with its business.

Economy relied on Vikas and the agreement – at the time it had no alternate suppliers. It had paid millions of dollars, as it promised, and tried to continue business.

Vikas accepted the money and almost immediately, materially breached the agreement by further underhanded dealings.

Economy paid for peace; instead it has been plagued with not only the forgeries, fabrications, and evolving evidence in this case, but two other lawsuits in Texas and a criminal suit in India. Its business information has been disclosed to the Indian public. Its relationship with the suppliers is injured. Its business is crippled.

### 5. Remedy.

For fraudulently inducing Economy into the settlement agreement, Vikas must restore Economy to its position before the agreement. Vikas must return the $40 million that Economy paid under the agreement with interest and must pay for Economy's costs in this case.

Vikas argued that "it has not been given the opportunity to fully and vigorously litigate the issues in this suit." It has been given ample opportunity to present its case – all it has done is fabricate evidence or not produce it.

Despite the court's best efforts to manage this case productively, it could not make Vikas act properly. For that, the court sanctioned Vikas by striking its

claims. Vikas gave up its opportunity to litigate claims by not participating in this case in good faith.

6.  *Conclusion.*

Vikas did not and never intended to uphold its promises to Economy. On its motion for summary judgment, Economy will prevail. Vikas will pay Economy the money it received under the settlement with interest and Economy's costs in this case.

Signed on May __13__, 2020, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge